UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DANIEL BOCK, JR.,**<br><br>Plaintiff,<br><br>v.<br><br>**PRESSLER & PRESSLER, LLP,**<br><br>Defendant. | Civ. No. 11-7593 (KM) (SCM)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

Plaintiff Daniel Bock, Jr. brought this action against a law firm, Pressler and Pressler, LLP ("Pressler"), based on a debt collection action that Pressler initiated against Bock in State court. While that state court action was pending, Bock brought this federal court action against Pressler, alleging that Pressler made a false or misleading representation in violation of the Fair Debt Collections Practice Act (the "FDCPA"), 15 U.S.C. § 1692e.

On June 30, 2014, I granted Bock's summary judgment motion. Pressler appealed. On appeal, the United States Court of Appeals for the Third Circuit *sua sponte* raised the issue of Bock's Article III standing in light of *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540 (2016), a case decided by the Supreme Court after my decision but while the Third Circuit appeal was pending. *Bock v. Pressler & Pressler, LLP*, 658 F. App'x 63 (3d Cir. 2016). The Third Circuit remanded the case to this Court to determine in the first instance whether Bock's alleged harm is sufficiently concrete and particularized to satisfy the injury-in-fact requirement for Article III standing enunciated in *Spokeo*. *Id.* at 65. If Bock lacked standing to bring his claims in the first place, that would of course vitiate this Court's judgment in his favor.

1

That *Spokeo*/standing issue is now before this court on remand. I authorized supplemental briefing on that issue (ECF no. 82). For the reasons stated below, I find that Bock has established Article III standing, and I shall re-enter the Judgment (ECF no. 67)[1] that was vacated by the Third Circuit.

## I. BACKGROUND

Because I write for the parties and have recounted the facts of the case at length in my prior summary judgment opinion (Opinion, ECF no. 59), I summarize the facts only briefly. Pressler is a law firm that specializes in collection law and is a debt collector within the meaning of FDCPA. A creditor, Midland, retained Pressler to pursue a debt owed by Bock that allegedly exceeded $8,021.57.

Midland electronically transmitted basic information[2] concerning its claim against Bock to Pressler's computer system. (Affidavit of Gerald J. Felt, Esq. at ¶ 11). The information was then subjected to a series of reviews by non-attorneys and internal "scrubs" by Pressler's computer system. After surviving these reviews and scrubs, the information was imported into a form collection letter, which was sent to Bock on September 15, 2011, after a final review for accuracy by a member of Pressler's non-attorney staff. (*Id.* at ¶¶ 18–20;

---

[1] Record items cited repeatedly will be abbreviated as follows

| | |
|---|---|
| "Def. Br." = | Defendant's Brief Regarding Subject Matter Jurisdiction (ECF no. 85) |
| "Pl. Br." = | Brief On Behalf Of Plaintiff, Daniel Bock, Jr. Establishing Article III Standing (ECF no. 86) |
| "Def. Reply" = | Defendant's Reply Brief Regarding Subject Matter Jurisdiction (ECF no. 88) |
| "Def. Reply to Supp. Auth." = | Defendant's Brief in Response to Plaintiff's Notice of Suppleme[n]tal Authority Re: Standing (ECF no. 96) |

[2] The basic information that Pressler receives from Midland (and other clients) consists essentially of the debtor's name, address, and social security number, the outstanding balance, annual percentage rate, other charges and fees, closing dates of the billing cycle, the date the account was opened, and the dates of recent payments. (Felt Aff. ¶ 13).

Pressler L. Civ. R. 56.1 Statement at ¶ 2). Bock did not respond and did not remit any funds. (Certification of Mitchell L. Williamson, Esq. at Ex. A).

After thirty-five days passed without the return of the initial collection letter or any repayment or arrangement with Bock, Pressler then transferred the electronic information file to its "Approve for Suit Department." There, non-attorneys "trained to review the new claim further to determine whether it should proceed through litigation," "check[ed] and verif[ied]" the same basic information about the debt. In addition, they checked whether the statute of limitations had run, whether there was some unresolved "'dispute' code" (it is unclear what Pressler means by this), and whether the social security number on record was accurate. (Felt Aff. ¶¶ 20–22). Then, the "Summons and Complaint" team, which also included no attorneys, verified that an initial collection letter had been sent, that Pressler had Bock's correct home address, that Bock's address is in the New Jersey county in which the lawsuit would be brought, and that the suit was not barred by the statute of limitations, any bankruptcy, or a "'dispute' code." (*Id.* at ¶ 25). Once satisfied with this review, the team generated the actual Summons and Complaint by populating standard forms with the information on file. (*Id.*). It then added the Summons and Complaint against Bock to an electronic queue of all of the Summonses and Complaints it had generated for attorney review. (*Id.* at ¶ 26). The attorney at Pressler who is responsible for approving complaints for filing in New Jersey is Ralph Gulko, Esq. Mr. Gulko reviewed and approved the complaint against Bock. (*Id.*).

On October 20, 2011, Mr. Gulko's review and approval of the complaint against Bock occupied a total of four seconds. Computer records disclose that that was the period of time for which the electronic file containing the complaint against Bock and the previously-culled data (described *supra*) were open. (Gulko Aff. at ¶ 12). Gulko reviewed 673 complaints that day, approving 663 and rejecting 10. (*Id.*). Neither he nor any other attorney was involved with Midland's case against Bock in any way before his brief review of the pre-

3

drafted complaint. (*See* Gulko Dep. Testimony at 26:14 to 27:12; Gulko Aff. at ¶ 9; Felt Aff. at ¶¶ 9–26).

By all accounts, neither Mr. Gulko nor any other member of Pressler's staff reviewed, or otherwise had knowledge of, the contract between Bock and the bank, including any choice of law, choice of venue, or dispute resolution clause governing disputes between Bock and his creditor. (Bock's Statement at ¶ 47; Pressler's Resp. Statement at ¶ 47). Nor did Gulko or anyone else at Pressler review the agreement by which Bock's original creditor allegedly assigned this debt to Pressler's client, Midland. (Bock's Statement at ¶ 50; Pressler's Resp. Statement at ¶ 50).

On October 21, 2011, Pressler commenced a collection action against Bock by filing the complaint in the Superior Court of New Jersey, Special Civil Part. (Pressler's Statement at ¶ 4). The complaint was signed on behalf of Pressler by Ralph Gulko, Esq., "the attorney who reviewed, read, and signed the complaint." (*Id.* at ¶¶ 4–5). That one-page complaint states:

> It [*i.e.*, the plaintiff, Midland Funding LLC] is now the owner of the defendant(s) HSBC BANK NEVADA, N.A. account number 5458001561298245 which is now in default. There is due plaintiff from the defendant(s) DANIEL BOCK JR the sum of $8,021.57 plus interest from 05/31/2010 to 10/20/2011 in the amount of $102.98 for a total of $8,124.55.
>
> WHEREFORE, plaintiff demands judgment for the sum of $8,124.55 plus accruing interest to the date of judgment plus costs.

(Williamson Cert. at Ex. B).

On December 30, 2011, while that state action was pending, Bock filed the Complaint in this federal court action against Pressler. Bock alleged that Pressler made a false or misleading representation in violation of the FDCPA, 15 U.S.C. § 1692e. Under section 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* That statute enumerates a non-exhaustive list of specific conduct that constitutes a violation of the section, including, "[t]he false representation or implication that any individual is an attorney or that

any communication is from an attorney." *Id.* § 1692e(3). Bock alleged that although Mr. Gulko signed the collection complaint,

> Gulko signs so many complaints that it is either physically impossible or so highly improbably that he read the Collection Complaint or made a sufficient inquiry from which to conclude that the factual allegations have evidentiary support. Therefore, Ralph Gulko on behalf of PRESSLER made false representations to collect or attempt to collect the Debt.

(Complaint ¶ 37)

On October 1, 2013, Pressler moved for summary judgment dismissing the action (ECF no. 32), and on the following day, Bock moved for summary judgment on the issue of liability (ECF no. 34). On June 30, 2014, I denied Pressler's motion and granted summary judgment in favor of Bock. In my Opinion on summary judgment, I held that

> a signed complaint is inherently false and misleading, in violation of 15 U.S.C. [§] 1692e, where, at the time of signing, the attorney signing it has not
>
> > 1) drafted, or carefully reviewed, the complaint; and
> >
> > 2) conducted an inquiry, reasonable under the circumstances, sufficient to form a good faith belief that the claims and legal contentions in the complaint are supported by fact and warranted by law.

*Bock v. Pressler & Pressler, LLP*, 30 F. Supp. 3d 283, 303–04 (D.N.J. 2014) (citing N.J. Ct. R. 1:4–8(a); Fed. R. Civ. P. 11; *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 1002–1003 (3d Cir. 2011), *cert. denied*, —— U.S. ——, 132 S. Ct. 1143 (2012); *Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 99–102 (E.D.N.Y. 2009); *Nielsen v. Dickerson*, 307 F.3d 623, 635–638 (7th Cir. 2002)), *as corrected* (July 1, 2014), *as corrected* (July 7, 2014). I further held that "the evidence shows that the only attorney involvement . . . prior to Pressler filing suit [against Bock] on Midland's behalf was a hurried, ministerial review" that "would not meet the *Lesher/Nielsen* standards for meaningful attorney involvement when . . . filing a complaint." *Id.* at 306. Consequently, "Pressler, when it signed and filed the state court civil complaint against Bock, violated the FDCPA, 15 U.S.C. § 1692e." *Id.*

On September 15, 2014, the parties stipulated that Bock's damages were $1,000, the maximum allowed for statutory damages under 15 U.S.C. § 1692k(a)(2)(A). On December 4, 2014, I entered final judgment in favor of Bock, from which Pressler appealed.

The Third Circuit heard oral argument in this case while *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540 (2016), was pending before the Supreme Court. On May 16, 2016, the Supreme Court issued its decision in *Spokeo*. On July 27, 2016, the Third Circuit vacated the judgment and remanded this case so that this Court could determine whether Bock had Article III standing in light of *Spokeo*. *Bock*, 658 F. App'x 63.

I authorized supplemental briefing on the standing issue (ECF no. 82). The parties submitted such supplemental briefs. (ECF nos. 85, 86, 87, 88, 89, 93, 96) I now address the standing issue, which goes to the subject matter jurisdiction of the court.

## II. LEGAL STANDARDS AND DISCUSSION

### A. Legal Standard

This matter came before the Court on a motion for summary judgment. I apply a summary judgment standard in determining whether there is any issue of fact as to the jurisdictional *Spokeo*/standing issue raised by the Court of Appeals.[3]

---

[3] The Court of Appeals raised the Article III standing issue *sua sponte* in light of intervening Supreme Court authority. If that issue had been raised by a party, the procedural vehicle would have been a motion under Fed. R. Civ. P. 12(b)(1). Because discovery is complete and both parties have submitted evidence for the Court's consideration, this cannot be regarded as a facial challenge to the complaint. Rather, it is a factual challenge to the Court's jurisdiction. In such a case, factual disputes may require resolution *via* a plenary hearing. I here apply a summary judgment standard to determine whether such a hearing is necessary. *See, e.g., Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

Pressler emphasizes the difference between the showing required at the pleading stage, as compared to the summary judgment stage. (Def. Reply to Supp. Auth. 4–5) (citing *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017). I agree. There is indeed a difference, and "having developed through discovery a summary judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. 2548.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial.").

---

record, plaintiffs are not entitled to 'rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.'" *Id.* at 270 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992)).

## B. Article III Standing

### 1. Legal Principles

Under Article III of the U.S. Constitution, a plaintiff seeking to establish standing to sue must demonstrate: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016)), *cert. denied sub nom. C. A. F. v. Viacom Inc.* (U.S. Jan. 9, 2017). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596 (1990)). As the Supreme Court has explained:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992) (internal citations omitted).

In *Spokeo*, the plaintiff alleged that Spokeo, the operator of an online "people search engine" that conducts computerized background checks, violated the Fair Credit Reporting Act of 1970 ("FCRA") by providing inaccurate personal information about the plaintiff to Spokeo's customers. The plaintiff did not allege actual damages, prompting Spokeo to challenge the plaintiff's standing to sue. *Spokeo*, 136 S. Ct. at 1546. Reasoning that a "bare procedural

8

violation" of the FCRA might result in no harm at all,[4] the Supreme Court reversed the decision of the United States Court of Appeals for the Ninth Circuit. That court, without separately analyzing particularity and concreteness, had concluded that the alleged violation of a statutory right was sufficient injury-in-fact to confer standing—particularly because the plaintiff had a "personal interest[] in the handling of his credit information." *Id.* at 1550; *see Robins v. Spokeo, Inc.*, 742 F.3d 409, 413–14 (9th Cir. 2014). The Supreme Court took "no position as to whether the Ninth Circuit's ultimate conclusion— that [the plaintiff] adequately alleged an injury in fact—was correct." *Id.*

Here, as in *Spokeo*, the particular component of standing at issue is injury-in-fact. *Id.* To allege injury-in-fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Nickelodeon*, 827 F.3d at 272 (quoting *Finkelman*, 810 F.3d 187, 193) (internal quotations omitted). A harm is "concrete" only if it is "'*de facto*'; that is, it must actually exist"; it cannot be merely "abstract."[5] *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548).

A harm need not be tangible, however, to be "concrete." In *Spokeo*, the Supreme Court explained that whether an intangible harm rises to the level of injury-in-fact depends on historical practice and Congressional judgment. *Spokeo*, 136 S. Ct. at 1549. Specifically, courts should look to (a) whether the "'alleged intangible harm' is closely related" to a harm traditionally recognized at law, and (b) whether Congress has elevated it to the status of a legally cognizable, redressable injury. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, No. 15-2309, 2017 WL 242554, at *9 (3d Cir. Jan. 20, 2017) (citing *id.*).

---

[4] The Court illustrated the point thus: "An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* at 1550.

[5] "A harm is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Nickelodeon*, 827 F.3d at 272 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). It is undisputed that the injury in this case is particularized; Pressler filed a collection complaint against Bock himself, seeking to collect from Bock a debt that he allegedly owed.

9

*Spokeo* teaches, however, that a mere wave of the Congressional hand—
*i.e.*, the creation of a cause of action—is not enough to render an abstract
injury concrete. Allegations of a "bare procedural violation, divorced from any
concrete harm" cannot satisfy the Article III injury-in-fact requirement. *Spokeo*,
136 S. Ct. at 1549 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496,
129 S. Ct. 1142 (2009) ("[D]eprivation of a procedural right without some
concrete interest that is affected by the deprivation . . . is insufficient to create
Article III standing.")); *Nickelodeon*, 827 F.3d at 274 (citing *id.* at 1550). In
other words, a bare violation of a procedural right granted by statute is not
inherently injurious; to constitute an injury-in-fact, such a violation must
result in a concrete harm. That requirement persists even where a statute
"purports to authorize [a] person to sue to vindicate [a statutory procedural]
right." *Id.*; *Raines v. Byrd*, 521 U.S. 811, 820 n.3, 117 S. Ct. 2312 (1997) ("It is
settled that Congress cannot erase Article III's standing requirements by
statutorily granting the right to sue to a plaintiff who would not otherwise have
standing."). "Thus, standing based [only] on a violation of a statutorily created
right turns on whether such a right is substantive or merely procedural."
*Fuentes v. AR Res., Inc.*, No. CV157988FLWLHG, 2017 WL 1197814, at *3
(D.N.J. Mar. 31, 2017).

### 2. Analysis of the Parties' Contentions

The present dispute boils down to an argument over whether the
prohibition against a debt collector's use of "any false, deceptive, or misleading
representation or means in connection with the collection of any debt," by
means of a "false representation or implication that . . . [a] communication is
from an attorney," 15 U.S.C. § 1692e(3), protects a substantive right, or merely
a procedural one.

A "procedural right" is defined as "[a] right that derives from legal or
administrative procedure; a right that helps in the protection or enforcement of
a substantive right." *Landrum v. Blackbird Enterprises, LLC*, No. CV H-16-0374,
2016 WL 6075446, at *3 (S.D. Tex. Oct. 3, 2016) (for purposes of a *Spokeo*

analysis, citing Black's Law Dictionary (10th ed. 2014)). In contrast, a "substantive right" is "[a] right that can be protected or enforced by law; a right of substance rather than form." *Id.* "To the extent that a violation of the procedural right has no effect on the substantive right, the bare procedural violation does not cause an injury of the sort that, alone, would support standing."[6] *Id.*

Pressler argues that Bock has established (at most) a bare procedural violation of the FDCPA. Bock, in contrast, contends that he has alleged—and that the Court has already found—a substantive violation of a right established by section 1692e.[7] I agree with Bock that, at the very least, the protection that section 1692e provides to shield debtors, or alleged debtors, from a debt collector's use of "any false, deceptive, or misleading representation[s] or means in connection with the collection of any debt," is substantive. This

---

[6] *Landrum* offers a helpful analogy to elucidate the distinction between a procedural and substantive violation:

> Consider a hypothetical statute requiring building managers to notify occupants in the event of a fire in a timely manner via a loudspeaker using specific language. Now imagine that, during a fire, a manager effectively communicates a warning to an occupant in a timely manner but does so in person, after which the occupant escapes unharmed. The occupant was subjected to a bare, procedural violation. If, however, another occupant was never warned but smelled smoke and safely exited the building, the latter occupant was subject to a substantive violation of his right to be timely notified, albeit without independent, "tangible" harm. In the latter case, a statutory remedy would be appropriate. In the former case, only the manner in which the warning was to be delivered (i.e., the procedure) failed to meet statutory guidelines. The underlying right, the right to be timely notified in the event of a fire, was honored.

*Landrum*, 2016 WL 6075446, at *4.

[7] Bock argues, *inter alia*, that Pressler was obligated to disclose to Bock truthful and non-misleading information, and that the Court's finding that Pressler's "breach of that duty" is a sufficiently concrete injury. (ECF no. 86, Pl. Br. 5) Essentially, Bock contends that he has suffered an "informational injury." He cites *Nickelodeon* for the proposition that the "unlawful denial of access to information subject to disclosure" is an "[i]ntangible harm[] that may give rise to standing." (*Id.*) (quoting *Nickelodeon*, 827 F.3d at 273–74).

11

Congressionally-created right includes the right to be free from "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3).

### a. Post-*Spokeo* FDCPA Cases

I have benefited from, and cited, overtaking decisions of the United States Court of Appeals for the Third Circuit that interpret *Spokeo*. *See, e.g., In re Horizon Healthcare, supra*; *Nickelodeon, supra*. None of these are precisely on point, however. As Judge Wolfson recently noted, "the Third Circuit has not addressed whether a [bare] violation of the FDCPA can give rise to a concrete injury, [but] post-*Spokeo*, courts in this district have considered that question." *Fuentes*, 2017 WL 1197814, at *4. I therefore consider persuasive opinions of other courts, both in this district and elsewhere.

As I have previously observed, with respect to violations of section 1692e, decisions in this district "trend in favor of finding concrete injury under the FDCPA where the amount or validity of the debt has been misstated." *Thomas v. Youderian*, No. 16–1408, 2017 WL 1250988, at *7 (D.N.J. Feb. 3, 2017); *see Carney v. Goldman*, No. CV 15-260-BRM-DEA, 2016 WL 7408849, at *5–6 (D.N.J. Dec. 22, 2016) (holding that plaintiff's allegations that defendant violated § 1692e when it sent collection letters containing false and misleading statements about the amount of debt owed satisfied the Article III concreteness requirement); *Blaha v. First National Collection Bureau*, Case No. 16-2791, slip op. at 13–16 (D.N.J. Nov. 10, 2016) (concluding that plaintiff established a concrete injury-in-fact, where defendant allegedly sent to plaintiff a collection letter offering settlement of a time-barred debt, but failing to disclose the legal status of that debt).[8]

---

[8] Nor is this District an outlier. *See Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016) (allegation that plaintiff did not receive FDCPA-required disclosures sufficiently alleged concrete injury); *Medina v. Allianceone Receivables Mgmt., Inc.*, No. CV 16-4664, 2017 WL 220328, at *1 (E.D. Pa. Jan. 19, 2017) (where sentence in debt collection letter was found deceptive or misleading under Section 1692e so as to survive a motion to dismiss, "[t]he deceptive declaration in the letter . .

12

As I explained, "[t]o my mind, such cases fit easily within the *Spokeo* rationale. The right not to be given false information about the true amount owed is rooted in an interest traditionally recognized at law. Congress, in enacting the FDCPA, could give content to that interest and elevate particular violations of it to the status of a viable federal cause of action." *Youderian*, 2017 WL 1250988, at *8.

Courts in this district have also found sufficiently concrete § 1692e violations where the alleged misstatements did not concern the amount owed or validity of the debt. In *Youderian*, I found standing where the plaintiff alleged a violation of sections 1692e and 1692f arising from allegedly false and deceptive language in a debt collection letter concerning a convenience fee to be charged for the use of a credit card to pay the debt. *Youderian*, 2017 WL 1250988, at *9. Judge Wolfson came to a similar conclusion in *Fuentes*. 2017 WL 1197814, at *5 (holding that plaintiff alleged a concrete injury by alleging that, in violation of sections 1692e and 1692f, defendant represented that it was entitled to charge a credit card convenience fee not authorized by law or the contractual agreement). Judge Wolfson also recently held that the allegation that a creditor failed to disclose its identity in a voice message left on plaintiff's cellphone in violation of plaintiff's statutory rights under sections 1692d and 1692e was sufficiently concrete to satisfy Article III standing. *Pisarz*

---

. creates a particularized and concrete injury, at the very least unnecessary fear and anxiety on the part of the consumer. While the harm may be intangible, it involves a de facto injury nonetheless. The FDCPA was enacted to provide redress for such a result."); *Bautz v. ARS Nat'l Servs., Inc.*, No. 16CV768JFBSIL, 2016 WL 7422301, at *1 (E.D.N.Y. Dec. 23, 2016) ("[A]dequately alleging a 'false, deceptive, or misleading representation' under Section 1692e that is materially misleading to the least sophisticated consumer satisfies the concrete injury component of Article III standing because such conduct violates an individual's substantive statutory right to be free of abusive debt practices."); *Kaymark v. Udren Law Offices, P.C.*, 2016 WL 7187840, at *7 (W.D. Pa. Dec. 12, 2016) ("The goal of the FDCPA is to protect consumers from harmful debt-collection practices, and debtors have a statutory right to be free from being subjected to false, deceptive, unfair or unconscionable means to collect a debt.") (internal quotation marks omitted).

*v. GC Servs. Ltd. P'ship*, No. CV 16-4552 (FLW), 2017 WL 1102636, at *6 (D.N.J. Mar. 24, 2017).

### b. This Case

The present case differs from those other section 1692e cases, however, insofar as it does not involve an alleged misstatement of the amount or validity of the debt, the applicability of additional fees, or the identity of the creditor. Pressler argues forcefully that the only possible injury here is a bare procedural violation. That is so, says Pressler, because Bock "was sued on a debt that he does not deny owing, in a suit that he settled (while represented by [counsel])"; Bock makes "no claim that he was sued by the wrong creditor, in the wrong venue, on the wrong debt, or for the wrong amount." (Def. Br. 4–5) Relatedly, Pressler seeks to characterize the section 1692e violation as the lack of meaningful attorney review itself; such substandard attorney review, Pressler says, could not have harmed the debtor, but only the client, which may not have gotten its money's worth of legal work. (*Id.* at 5, 9–10)

To my mind, these facts do not dictate an outcome different from that of previous section 1692e cases in this district. For that conclusion I offer several reasons.

First, in enacting the FDCPA, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). With that factual foundation in place, Congress sought, by enacting FDCPA, to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.* § 1692(e). Pressler's argument here seems to carry the implication that Congress was concerned only with *inaccurate* claims, *i.e.*, claims for debts not actually owed. If so, FDCPA

14

presumably could have been a one-sentence statute. But FDCPA, including its title, is permeated by a Congressional intent to protect consumers from abusive debt collection *practices,* irrespective of whether the consumer in fact owed a debt. *See id.* § 1692(c) (finding that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts."). That an individual consumer may actually owe the money does not imply that the FDCPA's prohibitions on abusive debt collection practices are thereby demoted to "procedural" status. FDCPA does not declare open season on trickery, so long as the existence and amount of the debt are accurately stated.

Quite the opposite, in fact. "The FDCPA is designed to protect the consumer from the inherent harm caused when a debt collector, in seeking to collect a debt, is not straight with the consumer but instead makes a false or deceptive statement to achieve its purpose." *Medina v. Allianceone Receivables Mgmt., Inc.*, No. CV 16-4664, 2017 WL 220328, at *1 (E.D. Pa. Jan. 19, 2017). "To that end, in [s]ection 1692e Congress specifically precluded the 'use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Bautz v. ARS Nat'l Servs., Inc.*, No. 16CV768JFBSIL, 2016 WL 7422301, at *8 (E.D.N.Y. Dec. 23, 2016) (citing § 1692e). "Thus, through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,' 15 U.S.C. § 1692(a)." *Bautz*, 2016 WL 7422301, at *8 (citations omitted) (paraphrasing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) (African-American discrimination tester had standing because he was denied informational *content* to which he was entitled under the Fair Housing Act)).

In enacting FDCPA, Congress elevated certain abusive debt collection practices to the status of viable federal causes of action. Such practices violate interests traditionally recognized at law; proscriptions against fraud or false statements should come as no surprise. Among these Congressionally-recognized abuses is "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." *Id.* § 1692e(3). Such a false representation or implication is, in itself, the very conduct Congress expressly sought to proscribe.[9] Thus, the right to truthful

---

[9] Pressler appears to suggest that the misrepresentation that an attorney was meaningfully involved in the preparation of a collection complaint does not have the same potential for abuse as does the misrepresentation of attorney involvement at an earlier stage in the collection process. (*E.g.*, Def. Reply to Supp. Auth. 3–4) ("[M]eaningful attorney involvement claims are based upon the false sense of urgency that can arise when a consumer is misled by an attorney's communication into believing that a case has reached a more serious stage. . . . [In contrast,] Bock was actually sued.") The implication is that there is no harm at all in the complaint context, legally cognizable or not, for Congress to elevate. I disagree. I do not here repeat the discussion in my earlier summary judgment opinion, but for purposes of standing the considerations are similar, so I comment only briefly.

The misrepresentation of meaningful attorney review, whether in the context of a collection letter or a complaint, presents a risk of real harm to a debtor. Importantly, in the Third Circuit, there is no "requirement that a plaintiff show a statutory violation has caused a 'material risk of harm' before he can bring suit." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 637 (3d Cir. 2017). Accordingly, I discuss the risk of harm to the least sophisticated consumer, not to demonstrate that the injury is sufficiently concrete, but only to demonstrate that even in the context of a collection complaint, the misrepresentations prohibited by Congress in section 1692e(3) present dangers closely related to harms traditionally recognized at law.

As the Court of Appeals for the Seventh Circuit reasoned in the context of a collection *letter*, the risk of harm is as follows:

> An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.
>
> A letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which the letter was sent . . . . The attorney letter implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action. And the letter also implies

information in this context is a substantive right. *See also Linehan v. Allianceone Receivables Mgmt., Inc.*, No. C15–1012–JCC, 2016 WL 4765839, at *7–8 (W.D. Wash. Sept. 13, 2016) ("The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury.").[10]

---

that the attorney has some personal involvement in the decision to send the letter.

*Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir.1996).

True, as Pressler argues, once a complaint and summons has been filed, as in this case—whether filed by an attorney or non-attorney—the "price of poker" has undoubtedly gone up. (Def. Reply to Supp. Auth. 4) Indeed, Bock might be subject to an entry of default judgment if he did not appear.

Nevertheless, a complaint misrepresented as having been filed after attorney review (likely one of many filed en masse) falsely signals to a debtor that the creditor intends to litigate this particular claim. The least sophisticated consumer is at risk of being misled into believing that at least one attorney thinks the claim is meritorious, and that he or she must hire counsel to match the creditor's legal firepower. Alternatively, such a consumer is at risk of submitting to an unfavorable settlement agreement if the cost of hiring his or her own counsel is prohibitive—whether because the expense outweighs the value of the alleged debt or because the consumer simply cannot afford the legal fees. Thus, even at the stage at which a collection complaint has been filed, the false representation that an attorney was meaningfully involved in preparing the complaint presents harms closely related to those traditionally recognized at law.

10  Section 1692g cases cited by Pressler are not on point. For example, the court in *Jackson v. Abendroth & Russell, P.C.*, 207 F. Supp. 3d 945, 961 (S.D. Iowa 2016), found that "bare procedural violations of FDCPA sections 1692g(a) and (b) do not amount to a concrete injury," but that holding is confined to the factual and legal context of that case. There, the allegations involved the failure to include disclosures required under section 1692g, not misrepresentations under section 1692e. *Jackson* recognized, and cited cases for the proposition, that "violations of other FDCPA provisions may be sufficient on their own to constitute an Article III injury in fact." *Id.* (collecting cases finding alleged violations of section 1692e to constitute a concrete injury sufficient for Article III standing). *Perry v. Columbia Recovery Grp., LLC*, No. C16-0191JLR, 2016 WL 6094821 (W.D. Wash. Oct. 19, 2016), like *Jackson,* involved section 1692g, not section 1692e. According to *Perry*, the relevant requirements in section 1692g were merely "procedural rights designed to decrease the risk of injury identified by Congress in the FDCPA—abusive debt collection practices." *Id.* at *8. In contrast, section 1692e violations constitute harmful debt collection practices in themselves.

17

Here, the deceptive implication that an attorney was meaningfully involved in the preparation of the collection complaint against Bock violated that substantive right and created a particularized and concrete injury.[11] Under *Spokeo*, Bock need not establish any "additional harm" to surpass the standing threshold of concrete injury. *See Spokeo*, 136 S. Ct. at 1549 (emphasis omitted).

Accordingly, Bock has standing to bring this action.

---

[11] I briefly discuss here certain other contentions raised by Pressler.

Pressler builds several arguments on a fundamental misunderstanding of the violation alleged here. The violation is not a deprivation of meaningful attorney involvement. Bock's claim is based on the *misrepresentation* that there had been meaningful attorney involvement, in violation of section 1692e(3), which prohibits the "false representation or implication that . . . [a] communication is from an attorney." 15 U.S.C. § 1692e(3). The consumer is entitled, not to attorney review, but to truthful *information* about whether such review has occurred.

Relatedly, I find unpersuasive Pressler's argument that "'meaningful attorney involvement' is not a right elevated by Congress to a concrete injury; instead, it is a creation of common law that has historically been raised with no claim of actual damages and no consideration given to Article III standing." (Def. Br. 9; *see also* Def. Reply Br. 1) As stated in the previous paragraph, this mischaracterizes the right at issue. And I referred to that common-law background only in the course of garden-variety statutory interpretation to determine what constitutes a communication "*from an attorney*," within the meaning of section 1692e(3).

Pressler argues that cases cited by Bock are distinguishable because Bock has asserted a claim for statutory damages only. I have found, however, that Bock suffered a concrete injury. The plaintiff's election of statutory damages does not detract from that finding. "There is no caselaw that the Court is aware of finding that by selecting to pursue only statutory damages, a Plaintiff concedes he or she lacks an actual injury" for standing. *Ferguson v. DIRECTV, LLC*, No. 1:15CV2636, 2017 WL 733900, at *4 (N.D. Ohio Feb. 22, 2017).

Finally, Pressler cites a "risk of harm" standard and argues that it has not been met. In *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017), the Fourth Circuit affirmed the district court's holding that the plaintiffs lacked standing because they had failed to establish a "'substantial risk' of harm" as a result of a data breach. *Id.* at 268, 270. That case involved a "threatened injury" theory of standing, and it is inapposite. Here, I found at summary judgment that Bock had established that the substantive harm— Bock's subjection to the false representation or implication that a communication was from an attorney—was not threatened, but had already occurred.

### III. CONCLUSION

For the foregoing reasons, I conclude that Bock has established that he possesses Article III standing. I will re-enter the Judgment (ECF no. 67) vacated by the Third Circuit.

An appropriate Order follows.

Dated: May 25, 2017

_____
HON. KEVIN MCNULTY, U.S.D.J.