UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL BOCK, JR.,<br><br>Plaintiff,<br><br>v.<br><br>PRESSLER & PRESSLER, LLP,<br><br>Defendant. | Civ. No. 11-7593 (KM) (SCM)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

Before the court is the motion (ECF no. 100) of the defendant, Pressler and Pressler, LLP ("Pressler"), pursuant to Loc. Civ. R. 7.1(i), Fed. R. Civ. P. 59(e), and Fed. R. Civ. P. 60(b)(2), to reconsider, alter, or otherwise amend the Court's award of summary judgment to the plaintiff, Daniel Bock, Jr. (For convenience, I will refer to it as a "motion for reconsideration.") For the reasons stated herein, the motion is denied.

### I. BACKGROUND

Familiarity with my prior written opinions in this action is assumed. In particular, I do not repeat the facts or analysis in my original opinion granting summary judgment to the plaintiff, Bock (ECF no. 59 [as amended ECF nos. 61, 62], cited as "Op.") or my opinion on remand, finding that the plaintiff possessed Article III standing and reinstating summary judgment (ECF no. 97, cited as "Remand Op.").

In this action, Bock alleged that Pressler made false or misleading representations in violation of the Fair Debt Collections Practice Act (the "FDCPA"), 15 U.S.C. § 1692e. On June 30, 2014, I filed an exhaustive opinion on the merits ("Op."), denied Pressler's summary judgment motion, and granted

1

Bock's summary judgment motion. I entered judgment for Bock in the amount of $1000. (ECF no. 67)

Pressler appealed. On appeal, the United States Court of Appeals for the Third Circuit *sua sponte* raised the issue of Bock's Article III standing in light of the intervening case of *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540 (2016), decided by the Supreme Court after my decision but while the Third Circuit appeal was pending. *Bock v. Pressler & Pressler, LLP*, 658 F. App'x 63 (3d Cir. 2016). The Third Circuit remanded the case so that this Court could determine in the first instance whether Bock's alleged harm was sufficiently concrete and particularized to satisfy the injury-in-fact requirement for Article III standing that was enunciated in *Spokeo*. *Id.* at 65.

On remand, I authorized supplemental briefing on the subject of *Spokeo* and standing (ECF no. 82). The parties briefed the matter. ((ECF nos. 85, 86, 87, 88, 89, 93, 96)

On May 25, 2017, I filed an Opinion (ECF no. 97) holding that Bock had established Article III standing. I simultaneously entered an order (ECF no. 98) that the summary judgment motion of Bock again be granted, and that of Pressler denied, "for the reasons stated in the Court's prior Opinion (ECF no. 59)." I further ordered that "Judgment in the amount of $1000 shall again be entered in favor of Plaintiff, in substantially the same form as the prior Judgment (ECF no. 67), updated to include subsequent procedural history." (ECF no. 98) Accordingly, also on May 25, 2017, I re-entered final judgment on substantially the same terms as before. (*See* ECF no. 99)

## II. SCOPE OF REMAND AND OF RECONSIDERATION

### A. Implementation of the Court of Appeals' Mandate

Before reaching the merits of Pressler's motion, it is necessary to clarify this Court's view of its task on remand. The Court of Appeals never reached the merits of Pressler's appeal from my original grant of summary judgment, but remanded for a jurisdictional determination. I therefore consider whether,

2

consistent with the Court's mandate, I must, or even may, accept Pressler's invitation to revisit the merits of the summary judgment motion.

In light of the intervening *Spokeo* decision, the Court of Appeals *sua sponte* raised the issue of Article III standing. Its opinion, after reviewing the applicable law on standing, concluded as follows:

> Given the Supreme Court's directive in *Spokeo* regarding the need for a court to specifically address concreteness and particularization, we will remand this case to the District court to determine in the first instance whether Bock has Article III standing.

(3d Cir. Op. 5 (copy filed at ECF no. 74-2, reported as *Bock v. Pressler & Pressler, LLP*, 658 F. App'x 63 (3d Cir. 2016)).

The formal judgment, which also constitutes the appellate court's mandate, stated as follows:

> **IT IS ORDERED AND ADJUDGED BY THIS COURT** that the judgment of the District Court entered December 4, 2014, be and the same is hereby vacated and remanded to the District court for further proceedings consistent with this Opinion.

(3d Cir. Judgment and Mandate (copy filed at ECF no. 74))

> [A] district court must adhere to the mandate and the law of the case as it is established on appeal. *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir.1985). At the same time, a district court is free to decide any issue that was not explicitly or implicitly decided on a prior appeal. *See Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S. Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979); *Sprague v. Ticonic Bank*, 307 U.S. 161, 168, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939); *Bankers Trust Co., supra*, 761 F.2d at 950 . . . .

*Taylor v. United States*, 815 F.2d 249, 252 (3d Cir. 1987).

Here, the Court of Appeals did not reach the merits of the prior summary judgment order, and did not explicitly or implicitly rule on the substantive issues presented by Pressler's appeal. Rather, in light of intervening Supreme Court authority, it raised an issue as to whether the plaintiff had possessed Article III standing to pursue his claim in the first place. It remanded for a

3

determination on that standing issue. All the mandate *required*, then, was that this Court make a determination as to the plaintiff's standing. If I did not find standing, that would of course end the matter; such a ruling would imply that the court does not have, and never had, subject matter jurisdiction.

The question here arises from the alternative outcome, in which I did find standing (as in fact I did). The Court of Appeals vacated the original judgment; obviously it could not stand or remain enforceable for so long as there was a cloud on this court's subject matter jurisdiction. So at a minimum, having found that the court had jurisdiction, I was required to (and did) re-enter judgment to restore the *status quo*. That is the narrowest view of the mandate: that this Court should do no more than remove the jurisdictional cloud on its prior judgment, and reinstate that judgment. That was a permissible course of action.

It was not, however, the only permissible course of action. Nothing about the mandate of the Court of Appeals constrains this Court as to the substantive merits. I may, then, entertain Pressler's motion for reconsideration to the same extent I could have done if the jurisdictional issue had not intervened. Insofar as this motion is concerned, the mandate is transparent.

### B. Scope of Reconsideration Motion

A motion under Local Rule 7.1(i), Rule 59(e), or Rule 60(b)(2) would ordinarily require a substantial threshold showing before a court will consider reopening matters already decided. *See infra.* Because the procedural context is somewhat convoluted, however, I must clarify what is being "reconsidered." In particular, I state that Pressler will not be procedurally disadvantaged for having asserted these substantive grounds in a motion filed after, rather than before, May 25, 2017, the date I re-entered judgment on remand.

While my decision on remand was pending, Pressler's counsel filed a letter ("Supplemental Letter", ECF no. 90) proffering new substantive (*i.e.*, non-standing) arguments. The Supplemental Letter argued that the court had "reversed the burden of proof" in its original summary judgment ruling, and

that the FDCPA, at least as applied by the Court, would violate the *Noerr-Pennington* doctrine. The letter also attached "new evidence" in the form of an expert report by Prof. Michael Ambrosio. Reasonably, the Supplemental Letter proposed that nothing further be filed on those issues unless and until the Court found that it possessed subject matter jurisdiction.

In response, I entered a text order stating that I would decide first whether the Court possessed subject matter jurisdiction under *Spokeo*. (ECF no. 92) That text order also provided that "any reopening of discovery or supplementation of the earlier summary judgment record will not be granted as a matter of course, but must be sought by motion." (*Id.*)

It was presumably in response to my text order that Pressler filed the current motion for reconsideration. (ECF no. 100) In it, Pressler seeks to reopen the judgment and assert the additional substantive arguments that were raised in its Supplemental Letter. I accept that it was not practical for such a motion to be filed in advance of my ruling on standing, and I accept the Supplemental Letter as a sufficient reservation of Pressler's position. I will therefore consider this motion on its own terms—*i.e.*, *nunc pro tunc*, as if it had been filed at the time of the Supplemental Letter—without imposing any additional threshold barrier to consideration.

That said, the motion (even considered *nunc pro tunc*) does seek reconsideration of matters decided in 2014, in connection with the original summary judgment ruling. It therefore does implicate law of the case doctrine and the standards for reconsideration of a previously entered order.

On remand, by re-entering judgment on the same basis as before, I intended to incorporate and preserve the grounds that Pressler raised in opposition to Bock's original motion for summary judgment motion, which I granted in 2014. Such grounds, I believe, are fair game on any subsequent appeal. As to Pressler's newly-asserted grounds, however, the narrow issue is whether the court should deny reconsideration, or hew to the law of the case. It is on that basis that I analyze Pressler's current motion.

5

## III. LEGAL STANDARDS

### A. Motion to Reconsider or Amend Order or Judgment

A motion under Local Rule 7.1(i) or Rule 59(e) to reconsider, alter, or amend a judgment or order is granted sparingly, generally only in one of three situations: (1) when there has been an intervening change in the law; (2) when new evidence has become available; or (3) when necessary to correct a clear error of law or to prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (reconsideration motion); *Carmichael v. Everson*, 2004 WL 1587894 (D.N.J. May 21, 2004) (reconsideration motion); *Blystone v. Horn*, 664 F.3d 397, 415–16 (3d Cir. 2011) (Rule 59(e) motion) (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)).

Evidence or arguments that were available at the time of the original decision will not support a motion to reconsider or amend an order. *Damiano v. Sony Music Entm't, Inc.*, 975 F. Supp. 623, 636 (D.N.J. 1997) (reconsideration motion); *Bapu Corp. v. Choice Hotels Int'l, Inc.*, 2010 WL 5418972, at *4 (D.N.J. Dec. 23, 2010) (reconsideration motion) (citing *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001)). Newly presented evidence, in particular, will not be considered if it was or reasonably could have been available at the time of the original motion:

> We have made clear that "'new evidence,' for reconsideration purposes, does not refer to evidence that a party ... submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." [quoting *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 252 (3d Cir.2010)] Evidence that is not newly discovered, as so defined, cannot provide the basis for a successful motion for reconsideration. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

6

*Blystone*, 664 F.3d at 415–16. A reconsideration motion must be filed within 14 days, and a Rule 59(e) motion to amend within 28 days, after the entry of the challenged order. Loc. Civ. R. 7.1(i); Fed. R. Civ. P. 59(e).

Rule 60(b)(2), also cited in Pressler's motion, authorizes a motion for relief from a judgment or order "based on newly discovered evidence that, with reasonable diligence, could not have been discovered in time to more for a new trial under Rule 59(b)." "The 'standard for granting relief on the basis of newly discovered evidence' is 'the same' whether relief is sought under Rule 60(b)(2) or pursuant to a motion for a new trial under Rule 59 . . . ." *Colyer v. Consol. Rail Corp.*, 114 F. App'x 473, 480 (3d Cir. 2004) (quoting *Compass Tech., Inc. v. Tseng Labs., Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995)). That standard, most commonly stated in relation to a motion for a new trial, is as follows:

> [It] requires that the new evidence (1) be material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of the trial (*Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir.1991)). Any party requesting such relief "bears a heavy burden" (*id.*, quoting *Plisco v. Union R. Co.*, 379 F.2d 15, 17 (3d Cir.1967)).

*Compass Tech.*, 71 F.3d at 1130. A Rule 60(b)(2) motion must be brought within one year after the entry of the judgment or order that is challenged. Fed. R. Civ. P. 60(c)(1).

### B. Law of the Case

Also implicated by Pressler's motion, though not cited by any party, is the law-of-the-case doctrine. That doctrine, as applicable here, governs serial decisions by the same court in the same case: "As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382 (1983). The doctrine "'limits relitigation of an issue once it has been decided' in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir.

2003) (quoting *In re Continental Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002)). The doctrine is designed to "promote finality, consistency, and judicial economy." *Id.* at 787. *Accord Farmer v. Lanigan*, No. CV 12-5716 (SDW), 2016 WL 4107693, at *3 (D.N.J. Aug. 1, 2016); *see also United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017).

Unlike the more rigid post-judgment rules of *res judicata*, the law of the case doctrine is directed to the court's exercise of its discretion to reconsider issues *during* a pending case. *Motamed v. Chubb Corp.*, No. 15-7262, 2016 WL 4581409, at *3 (D.N.J. Sept. 1, 2016) (citing *Public Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997)). Thus, for example, a court may opt to revisit a legal issue already decided where "(1) there has been an intervening change in the law; (2) new evidence has become available; or (3) reconsideration is necessary to prevent clear error or a manifest injustice." *Minard Run Oil Co. v. U.S. Forest Serv.*, 549 F. App'x 93, 98 (3d Cir. 2013) (quoting *ACLU v. Mukasey*, 534 F.3d 181, 188 (3d Cir. 2008) (quoting *Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1999)). These three factors, of course, are familiar; they duplicate those cited under Local Rule 7.1 or Rule 59(e). Nevertheless, the law of the case doctrine reserves to the Court a broader measure of discretion to reconsider its own decisions. *See United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) (citing *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997)). The court is not obligated to persist in a mistake.

## IV. DISCUSSION OF MERITS

Pressler's motion rests on two of the three standard grounds for reconsideration.[1] Pressler proffers

---

[1] The third ground, an intervening change in the law, is not pressed here. There is of course one such intervening change in the law: the Supreme Court's decision on standing in *Spokeo*, which was filed after my original summary judgment decision. *Spokeo*, however, has been dealt with separately, in my most recent Opinion on remand (ECF no. 97).

8

(A) a clear error of law, in that the court improperly shifted the burden of proof on summary judgment;

(B) new evidence, in the form of an expert report by Professor Michael Ambrosio; and

(C) manifest injustice, in that the Court's interpretation of FDCPA violates the First Amendment right of petition under the *Noerr-Pennington* doctrine.

I consider those contentions in order.

### A. Shifting the Burden of Proof

The claim that the Court, in awarding summary judgment to Bock, "shifted the burden of proof" is something of a miscue. Pressler does not mean that the Court miscited or misapplied the standards governing summary judgment under Fed. R. Civ. P. 56, which are well-settled. *See* Op. 8–9 (citing, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548 (1986)). Rather, Pressler argues that, as a matter of State law, the plaintiff could not prevail without marshaling expert opinion testimony, and that therefore the Court, by awarding summary judgment to plaintiff, *in effect* reversed the burden of proof:

> "'Meaningful attorney involvement' is a theory that pertains only to lawyer debt collectors and not lay collectors, as the focus of the theory is attorney involvement. However, "[a]s 'the duties a lawyer owes to his client are not known by the average juror,' expert testimony must necessarily set forth that duty and explain the breach." *Carbis Sales, Inc. v. Eisenberg*, 397 N.J. Super. 64, 78, 935 A.2d 1236 (N.J. Super. Ct. App. Div. 2007) (quoting *Stoeckel v. Twp. of Knowlton*, 387 N.J. Super. 1, 14, 902 A.2d 930 (N.J. Super. Ct. App. Div. 1990), *cert. denied*, 188 N.J. 489, 909 A.2d 724 (N.J 2006). Bock offered no expert testimony in support of his Rule 1:4-8 theory, thereby failing to meet his burden of proof. In granting summary judgment to Bock, the Court has erroneously shifted the burden of proof, requiring Defendant to negate facts on which Plaintiff has offered no evidence.

(ECF no. 100-1, Brief in support of motion ("Pressler Brf.") 3)

To this contention, there are two answers.

9

First, this argument should have been raised three years ago, in response to the motion for summary judgment. At its heart it is a contention that the plaintiff's proofs lacked a critical element: expert opinion testimony. If failure to require such expert testimony was a "clear error of law," then the need for such testimony, and its absence from plaintiff's presentation, should have been equally clear to Pressler at the time. Pressler offers no justification for failing to raise this argument before.[2] On this basis alone, Pressler's argument is properly rejected; it is an insufficient basis for reconsideration of the Court's summary judgment ruling, or for departure from the law of the case.

Second, this argument, even if considered, would fail on its own terms. By considering it in the alternative, however, I do not mean to suggest that this argument was properly raised or preserved in connection with an appeal of my earlier summary judgment ruling.

The cited case of *Carbis, supra*, has nothing to do with a debt collector's misrepresentation that "meaningful attorney review" preceded a communication to the debtor. Rather, *Carbis* concerned the tort of attorney negligence, also known as legal malpractice:

> Legal malpractice is a variation on the tort of negligence. . . . To establish legal malpractice, a plaintiff must show: "'(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation.'" . . . . As "the duties a lawyer owes to his client are not known by the average juror," expert testimony must necessarily set forth that duty and explain the breach. *Stoeckel v. Twp. of Knowlton*, 387 N.J. Super. 1, 14, 902 A.2d 930 (App. Div.), *certif. denied*, 188 N.J. 489, 909 A.2d 724 (2006) . . . .

---

2   The awkward recasting of the argument as the court's "reversal of the burden of proof" may be Pressler's attempt to imply that it could not have been raised until after the Court rendered its original summary judgment opinion. Nevertheless, if the failure of proof was truly so glaring, it should have been noted by Pressler and argued to the Court. I note that Pressler made no motion for reconsideration of the original order on this or any other ground.

10

*Carbis Sales, Inc.*, 397 N.J. Super. at 78, 935 A.2d at 1244–45.

This is not a state-law malpractice action by a client against that client's lawyer, alleging deficient performance. It is a federal-law FDCPA action by a debtor against a debt collector who also happens to be the *creditor*'s lawyer, alleging misrepresentation. Pressler cites no case holding that an FDCPA cause of action regarding a misrepresentation of meaningful attorney involvement requires expert testimony. Failure to cite or follow state-court rules of proof regarding attorney malpractice is very far from being an error, let alone a clear error, of law.[3]

### B. Ambrosio Report

Pressler proffers as "new evidence" a Declaration (ECF no. 100-2 at 1) and Report (ECF no. 100-2 at 4 ("Ambrosio Report")) of Michael P. Ambrosio, a professor at the Seton Hall University School of Law. Prof. Ambrosio, an experienced practitioner and teacher with many publications to his credit, is surely qualified to speak on matters of legal ethics. In his Report, he opines that Pressler's review process was "in accord with Mr. Gulko's and the Pressler firm's professional obligations to clients and the requirement of the New Jersey Rules of Professional Conduct and other law." (Ambrosio Report 1)

---

[3] Indeed, even in a malpractice case, expert testimony may be forgone where the deviation from a reasonable standard of care is within a "layperson's common knowledge," or an issue is "so basic that it may be determined by the court as a matter of law." *E.g., Sommers v. McKinney*, 287 N.J. Super. 1, 11, 670 A.2d 99, 104 (App. Div. 1996) (no expert opinion required where attorney inadequately prepared, failed to submit legal argument, and misrepresented state of case to client); *Stewart v. Sbarro*, 142 N.J.Super. 581, 591, 362 A.2d 581 (App.Div.) (failure to execute and record bond and mortgage), *certif. denied*, 72 N.J. 459, 371 A.2d 63 (1976); *Fuschetti v. Bierman*, 128 N.J. Super. 290, 295, 319 A.2d 781 (Law Div.1974) (blowing statute of limitations); *cf. Roper v. Blumenfeld*, 309 N.J. Super. 219, 231, 706 A.2d 1151, 1156 (App. Div. 1998) (reviewing applicability of *res ipsa loquitur* in medical malpractice action).

Consider, for example, a case in which a client sued his attorney for malpractice, claiming that the attorney gave his case only four seconds of attention before filing the complaint. Such facts might well speak for themselves, or meet the "common knowledge" standard for dispensing with expert testimony.

The Ambrosio Report is dated October 6, 2016; it came into existence because Pressler retained Prof. Ambrosio to prepare it. Pressler states that it constitutes "new evidence" because it was prepared after the Court granted summary judgment and after the Court of Appeals remanded for consideration of standing.[4] This is not primary evidence, however, uncovered after some exhaustive search; it is an expert opinion, created at a date of the defendant's choosing, I therefore do not find the date of preparation very significant in the analysis of whether it constitutes "new evidence." Under any of the standards cited above, new evidence must be truly new; that is, it must be evidence that the party did not obtain and could not reasonably have obtained in advance of the original ruling. Prof. Ambrosio's Report does not remotely qualify as new evidence under that standard.

The Ambrosio Report analyzes the Pressler firm's (and Mr. Gulko's) process for review of complaints. Those facts were well in hand at the time of the original motion and ruling; indeed the summary judgment papers (and my summary of them) are the source of the facts to which Prof. Ambrosio applied his expertise. Prof. Ambrosio consciously and deliberately confined his analysis to those facts, and introduced no new ones. It follows that if Pressler had wished to retain an expert to opine on those (largely undisputed) facts, it could have done so at the time of the summary judgment motion. Prof. Ambrosio's opinion also to some degree simply disagrees with the reasoning of my summary judgment opinion. He opines, for example, that cases cited in support of the ruling are distinguishable, and so on. While his learned analysis deserves, and has received, a respectful reading, to call it "new evidence"

---

[4] No implication should be drawn, however, that this Report bears on the basis for the Court of Appeals' remand. The Report has nothing to do with the issue of standing. The record will bear the interpretation that Pressler has opportunistically taken advantage of a jurisdictional remand to salt the record with new substantive issues in anticipation of a second appeal.

stretches the definition past the breaking point. This Report is not "new evidence," and on that basis I decline to consider it.[5]

---

[5] At any rate, the Report, if considered, would be unlikely to alter the Court's view. In so stating, I repeat that these grounds were were not raised or preserved in connection with my prior summary judgment ruling. [fn. cont'd on next page]

First, the issue is not whether Pressler or Gulko violated standards of ethical representation. At issue is the separate question of whether, under the FDCPA, they impliedly misrepresented the level of attorney review in communications to the debtor. That is not a matter of attorney ethics, but a matter of how a debtor would interpret the communication. (*See* Op. 10–14.) Court rules require that attorneys reasonably investigate, but such rules are not rooted in any concern that the mere hint of attorney involvement will up the ante or intimidate the court. *Compare* Op. 12–13 (citing, *e.g.*, *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) (Finding FDCPA violation, in part because "[a]n unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. . . . [T]he attorney . . . is better positioned to get the debtor's knees knocking.")) Thus I am wary of any simplistic equation between ethical rules and the dictates of the FDCPA.

Second, and relatedly, although my Opinion cited rules of court (Fed. R. Civ. P. 11(b) and N.J. R. Ct. 1:4-8(a)), I was careful to cite them as a guide, and to hold that the FDCPA does not "incorporate rules of court by reference or create a private cause of action for their violation." (Op. 19) I did not simply incorporate the court rules, but articulated a standard:

> "Accordingly, I hold that a signed complaint is inherently false and misleading, in violation of 15 U.S.C. 1692e, where, at the time of signing, the attorney signing it has not
>
>> 1) drafted, or carefully reviewed, the complaint; and
>>
>> 2) conducted an inquiry, reasonable under the circumstances, sufficient to form a good faith belief that the claims and legal contentions in the complaint are supported by fact and warranted by law."

(Op. 23) That standard, I felt, comported with what a debtor had a right to infer from the attorney's filing of a criminal complaint. The standard was somewhat less detailed and prescriptive than the one developed by Judge Mauskopf, because I felt that the standard should be elaborated "case-by-case." (Op. 23 )

Third, the materials before the Court permitted me to rule on summary judgment as a matter of law. The sources cited by Prof. Ambrosio (*e.g.*, ABA ethical standards, the New Jersey RPC, and reported cases) are ordinary sources of law that a court is competent to assess and apply to a largely agreed-upon set of facts. If issues of fact had required that the case go to a jury of laypersons, expert testimony might have been offered, but the case did not get to that stage.

Finally, it is not accurate to state, as Pressler does, that "'[m]eaningful attorney involvement' is a doctrine applied solely to attorney debt collectors[, which] is a reflection of rules of professional conduct that limit the delegation of tasks without attorney oversight and supervision." (Pressler Brf. 4, citing Ambrosio Report) To

13

### C. *Noerr-Pennington*

Finally, Pressler argues that the summary judgment ruling should be overturned on grounds of "manifest injustice." The Court's application of FDCPA to court filings, says Pressler, infringes on its First Amendment right "to petition the Government for a redress of grievances." U.S. Const. amend. I. In particular, Pressler invokes the *Noerr-Pennington* doctrine. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585 (1965). *See also Mariana v. Fisher*, 338 F.3d 189, 199 (3d Cir. 2003) (no antitrust liability for seeking government action that would disadvantage a competitor).

> Although the doctrine originated in the antitrust context, it has been extended on a limited basis "to offer protection to citizens' petitioning activities in contexts outside the anti-trust area as well." *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 326-27 (3d Cir. 1999); *see also BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516 (2002) (applying the doctrine to the National Labor Relations Act); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988) (doctrine applied to tort liability for actions based on petitions to the government to shut down a nursing home that was in violation of various regulations).

*Ontel Prods. Corp. v. Zuru Ltd.*, No. 17CV3658PGSLHG, 2017 WL 4444198, at *2 (D.N.J. Oct. 5, 2017).

Once again, the claimed injustice, although supposedly "manifest," does not seem to have occurred to Pressler in connection with the litigation of the summary judgment motions. The Court, within its discretion, is not inclined to entertain this argument, made three years after the fact and assertable only

---

repeat, "meaningful attorney involvement" is the *subject matter* of the misrepresentation; the entity *making* the misrepresentation is liable by virtue of being a debt collector, not a lawyer. More to the point, the permissible scope of delegation is not the gist of the misrepresentation; the FDCPA penalizes *misrepresentations* as to whether the attorney has personally been involved.

14

through the happenstance of a remand to ensure that the plaintiff possessed standing.

In the alternative, however, I briefly discuss the substance of the *Noerr-Pennington* argument, without implying that this unraised argument could have played any part in my earlier summary judgment ruling.

Pressler relies primarily on *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 817-20 (8th Cir. 2012). *Hemmingsen* merely rejected the proposition that the FDCPA was violated whenever a court rejected the creditor's position in a collection suit. The court had several rationales for its holding, one of which was that it was "consistent with the principle" that access to the courts is "an aspect of the First Amendment right to petition the Government." *Id.* at 819. The court also held that the statements at issue were not false or misleading. Although the creditor's position failed on summary judgment, the court held that "we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'" *Id.* at 820 (quoting *Heintz v. Jenkins*, 514 U.S. 291, 295-96, 115 S. Ct. 1489 (1995)). Here, by contrast, the allegation is that the communication of the complaint to the plaintiff was itself wrongful—*i.e.,* misleading and unconscionable because it carried the implied misrepresentation of attorney review.

I conclude that *Hemmingsen* does not stand for any broad principle that the First Amendment bars any FDCPA claim based on litigation-related communications. Many cases have so held; typical of these is *Wise v. Zwicker & Assocs., P.C.*:

> The defendants' argument that the *Noerr–Pennington* doctrine limits the application of the FDCPA to their activities is inapposite. The FDCPA specifically includes lawyers and litigation activities within its purview. *See Heintz v. Jenkins*, 514 U.S. 291, 115 S. Ct. 1489, 131 L.Ed.2d 395 (1995). The defendants present no cases in which a court has applied the *Noerr–Pennington* doctrine to FDCPA claims. In fact, this circuit has already rejected Noerr–Pennington protection for false statements in a debt-collector's complaint,

recognizing that the Petition Clause does not protect "sham petitions, baseless litigation, or petitions containing 'intentional and reckless falsehoods.' " *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 616 (6th Cir.2009) (quoting *McDonald v. Smith*, 472 U.S. 479, 484, 105 S. Ct. 2787, 86 L.Ed.2d 384 (1985)).

780 F.3d 710, 719 n.5 (6th Cir. 2015) (demand for attorney's fees in complaint's prayer for relief), *cert. denied*, 136 S. Ct. 793, 193 L. Ed. 2d 709 (2016).[6]

*Satre v. Wells Fargo Bank, NA*, 507 F. App'x 655 (9th Cir. 2013), is not to the contrary. There, the Court of Appeals held only that "[t]he district court

---

6     *See also Consumer Financial Protection Bureau v. Frederick J. Hanna & Associates, P.C.*:

> Nonetheless, several courts have considered and rejected the argument that the Noerr–Pennington doctrine extends even further to FDCPA claims brought against debt-collectors based on litigation activity. See *Wise v. Zwicker & Assoc., P.C.*, 780 F.3d 710 n. 5 (6th Cir.2015); *Basile v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 632 F.Supp.2d 842, 845–46 (N.D.Ill.2009) (collecting cases). These courts rely on the Supreme Court's holding in *Heintz*, "which contemplated attorney liability under the FDCPA." *Basile*, 632 F.Supp.2d at 846 (citing *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995)). As noted above, in Heintz, the United States Supreme Court held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz*, 514 U.S. at 299, 115 S.Ct. 1489. The Supreme Court has reaffirmed this principle as recently as 2010 in *Jerman*. See *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, et al.*, 559 U.S. 573, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010) (holding that a law firm subject to the FDCPA for its litigation activity is not entitled to the bona fide error defense of 15 U.S.C. § 1692k(c) for a mistake of law). And in neither *Jerman* nor *Heintz* did the Court express a Noerr–Pennington concern. As the Bureau points out, "not a single court in the Eleventh Circuit has ever applied *Noerr–Pennington* to bar an FDCPA claim." (Resp. at 12 (citing *Roban v. Marinosci Law Grp.*, 34 F.Supp.3d 1252, 1255 (S.D.Fla.2014) ("Deutsche Bank and Marinosci Law failed to cite to a single case from the Eleventh Circuit that extends the *Noerr–Pennington* doctrine to claims brought under the FDCPA. The Court could not find any in its independent research.")).) Moreover, the Eleventh Circuit's recent decision in *Miljkovic* re-emphasized its recognition of the FDCPA's protection of consumers from the full sweep of debt collectors' attorneys' false, misleading, or deceptive litigation activities.

114 F. Supp. 3d 1342, 1359–60 (N.D. Ga. 2015).

properly determined that Wechsler is immune from FDCPA liability under the *Noerr–Pennington* doctrine because the Satres'[] factual allegations in their amended complaint failed to establish that Wechsler, who was defending his client from litigation initiated by the Satres, was a 'debt collector.'" *See* 15 U.S.C. § 1692a(6). Thus *Satre* has little to say about the interplay between an FDCPA violation and the *Noerr-Pennington* doctrine, because it prefaced its holding with a finding that the prohibitions of the FDCPA did not apply at all.

In sum, even if I were inclined to entertain this belated citation of *Noerr-Pennington,* could not find that Pressler has identified an error of law, let alone a clear error or manifest injustice.

## V. CONCLUSION

For the foregoing reasons, I conclude that Pressler has not proffered sufficient grounds for the court to alter or amend its prior orders, or to depart from the law of the case. Pressler's motion for reconsideration (ECF no. 100) is therefore denied.

An appropriate Order accompanies this Opinion.

Dated: October 19, 2017

HON. KEVIN MCNULTY, U.S.D.J.